FILED
CLERK
3:20 pm, Mar 26, 2024
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
TIMOTHY BUTLER, #309172,

                           Plaintiff,

      -against-

FARRAH J. FARACI, JENNIFER BASILE,
JAMES EHLERS, JODI THOMLINSON,

                           Defendants.
------------------------------------------------------------------------X

**MEMORANDUM & ORDER**
24-0036(GRB)(ARL)

**GARY R. BROWN, United States District Judge:**

      Before the Court are the applications to proceed *in forma pauperis* ("IFP") filed by *pro se* plaintiff Timothy Butler ("Plaintiff") while incarcerated at the Suffolk County Correctional Facility ("Jail") in relation to his amended complaint against the defendants, each of whom is alleged to have played a role in an underlying state court child neglect case pending in family court. (Docket Entry "DE" 2, 9, 11.)[1] The defendants are Assistant County Attorney Farrah J. Faraci, Esq. ("Faraci"), Jennifer Basile, Esq. ("Basile"), who is alleged to be the attorney for the children, the Director of Suffolk County Child Protective Services ("SCCPS") James Ehlers ("Ehlers"), and the Assistant Director of SCCPS Jodi Thomlinson[2] ("Tomlinson" and collectively, "Defendants"). For the reasons that follow, the Court grants Plaintiff's applications to proceed IFP and finds that this Court lacks subject matter jurisdiction to adjudicate the claims alleged in the amended complaint. Thus, the amended complaint is dismissed without prejudice pursuant to Federal Rule of Civil Procedure 12(h)(3).

---

[1] Plaintiff filed an IFP application (DE 2) together with his original complaint (DE 1) and then filed another IFP application (DE 11) with his amended complaint (DE 9).

[2] Plaintiff has appended exhibits to his amended complaint that reflect that this defendant's sur name is spelled "Tomlinson" and Plaintiff also uses this spelling at page 3 of the complaint. *See* DE 9 at 3, 7, 14, 16. Accordingly, the Court refers to this defendant as "Tomlinson" hereafter

BACKGROUND

1. **Summary of the Amended Complaint**[3]

Plaintiff's brief amended complaint is submitted on the Court's general civil complaint form with an additional ten pages of attachments. *See* DE 9. Plaintiff has checked the box on the form to allege that this Court's diversity subject matter jurisdiction is invoked. *Id.* ¶ II. However, Plaintiff has not provided responses to any of the questions on the form that ask where each of the parties, including himself, is a citizen. *Id.* ¶ II B.1-2. Rather, he has drawn a diagonal line across each such space. *Id.* In the space that asks for the amount in controversy, Plaintiff alleges that he has "incurred $18,000 in legal fees and $100,000 in punitive damages for causing an interruption of contact with my 12 & 13 year old daughters." *Id.* ¶ II B.3. Additionally, Plaintiff's "Relief" section seeks a total award of $118,000. *Id.* ¶ IV.

In its entirety, Plaintiff's "Statement of Claim" alleges:

>  1 – Abuse of Process
>  2 – Intentional infliction of Emotional Distress
>  4 – Intentional Conscious Avoidance of Issues[4]
>  5 – Conspiracy

*Id.* ¶ III. However, Plaintiff also wrote "See Attached" and has annexed four handwritten pages and three pages of exhibits. *Id.* ¶ III and at pages 7-16. There, Plaintiff elaborates on each of the items listed in his Statement of Claim:

1) <u>Abuse of Process</u> – Notes dated 6/21/23 by Author Kristen Salcedo states that ACA Farah Faraci contacted CPS and asked them to amend the neglect petition so it would not be dismissed. The notes on 6/23/23 authored by Jodi Tomlinson shows

---

[3] Excerpts from the complaint are reproduced here exactly as they appear in the original. Errors in spelling, punctuation, and grammar have not been corrected or noted.

[4] Although Plaintiff included a third item, he has crossed it out and has not renumbered this list. *Id.* ¶ III.

2

    notes of a conference with Director James Ehlers.  Director Ehlers wished to withdraw the petition without prejudice but the County Attorney ACA Basile interfered (Exhibit B).

2) <u>Intentional Infliction of Emotional Distress</u>. The interference described above and the documents provided show that the County Attorney was interfering to satisfy a witness in a criminal case (Exhibit A) in order to not have me the Father have direct communication with my daughters at the witness's request.  This is causing emotional and physocolgical harm to me and my children.

3) <u>Intentional Conscious Avoidance of Issues</u>   On 6/23/23 Director James Ehlers directed that the Agency (CPS) should dismiss the petition without prejudice.   The decision for CPS regarding wether or not to dismiss a petition comes solely from the case workers and the Director.   Director Ehlers allowed the County Attorney Jennifer Basile to change the decision of his agency. (Exhibit B)

4) <u>Conspiracy</u>- A motion to dismiss a neglect petition was denied because the County Attorney had an agreement with their witness in the criminal charges (Danae Butler – my wife).   Th used there influence to change the decision of a secondary agency (CPS) in order to satisfy a third party. (Exhibit C)

*Id.* at 7-8.  Plaintiff next alleges, in its entirety:

    My name is Timothy Butler.  I am currently incarcerated at the Yaphank Correctional Facility in Yaphank, NY.  Prior to incarceration, I lived at 9 Peri Avenue in Holbrook, NY 11741.

    I was arrested Nov. 13, 2022 for multiple crimes.  They all revolve around an allegation of Domestic Violence by my wife Danae Butler.   The domestic violence charge generated a neglect charge by family court (CPS) although our children were not home at the time of the alleged incident.

    I hired a Family Court attorney by the name of Karyn Villor.  I had to let her go after receiving a bill for $18,000 without anything being accomplished.

    I was notified of the Neglect Petition by Senior Case worker Robyn Reyes in a letter dated December 6, 2022.  We had multiple conferences.  On 6/14/23 my attorney Karyn had filed a motion to dismiss.  The Case Notes essentially had enough information to contradict the entire petition.

    The Case Notes also showed clearly that for months the petitioning agency CPS had wanted to dismiss the petition without prejudice but another agency the County Attorneys asked them to come up with something else so the petition would not be dismissed.  This is because they had an agreement with the sole witness in my

3

> criminal charges my wife Danae Butler. You will see that she was having a conversation with case workers and the case workers informed Danae that Judge Iliou had granted me permission to mail letters through the childrens attorney and Danae clearly states shes supposed to be consulted with prior to any changes in any contact I have with my children.

*Id*. at 9-10. Finally, Plaintiff has annexed three typed pages as Exhibits A-C that appear to be excerpts from case worker reports. Exhibit A is numbered as page 19, Exhibit B is numbered as page 36 and Exhibit C is numbered as page 32 and each exhibit is entitled "Family Service Progress Notes." *Id*. at 12, 14, 16.

## LEGAL STANDARDS

The Second Circuit has established a two-step procedure wherein the district court first considers whether plaintiff qualifies for *in forma pauperis* status, and then considers the merits of the complaint under 28 U.S.C. § 1915(e)(2). *Potnick v. E. State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983).

### I.     *In Forma Pauperis*

Upon review of the IFP applications, the Court finds that Plaintiff is qualified by his financial status to commence these actions without the prepayment of the filing fees. Therefore, the applications to proceed IFP (DE 2, 9) are granted.

### II.    Sufficiency of the Pleadings

As Judge Bianco summarized,

> A district court is required to dismiss an *in forma pauperis* complaint if the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B)(i)-(iii). The Court is required to dismiss the action as soon as it makes such a determination. *See* 28 U.S.C. §§ 1915(e)(2)(B)(i)-(iii).
>
> It is axiomatic that district courts are required to read *pro se* complaints liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429

U.S. 97, 106 (1976)); *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010), and to construe them "'to raise the strongest arguments that [they] suggest [ ].'" *Chavis*, 618 F.3d at 170 (quoting *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010)). Moreover, at the pleadings stage of the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 123 (2d Cir. 2010), *aff'd*, --- U.S. ----, 133 S. Ct. 1659, 185 L. Ed. 2d 671 (2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 678 (citation omitted).

Notwithstanding a plaintiff's *pro se* status, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *accord Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted).

*Patrick v. Bronx Care*, No. 14-CV-7392 (JFB)(AKT), 2014 WL 7476972, at *1-2 (E.D.N.Y. Dec. 31, 2014).

## DISCUSSION

### I. Subject Matter Jurisdiction

Notwithstanding the liberal pleading standard afforded *pro se* litigants, federal courts are courts of limited jurisdiction and may not preside over cases if they lack subject matter jurisdiction. *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700 01 (2d Cir. 2000). A plaintiff seeking to bring a lawsuit in federal court must establish that the court has subject matter jurisdiction over the action. *See Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009) (citing *Sharkey v. Quarantillo*, 541 F.3d 75, 82 (2d Cir. 2008)). If a district court lacks

subject matter jurisdiction, it must dismiss the action. *See* FED. R. CIV. P. 12(h)(3); *see also Lussier*, 211 F.3d at 701. This Court has an obligation to examine its subject matter jurisdiction *sua sponte*. *See Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir. 2006).

Plaintiff seeks to invoke diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332 which requires both diversity of citizenship and an amount in controversy exceeding $75,000. *See* 28 U.S.C. § 1332; *Emiabata v. Farmers Ins. Corp.*, 848 F. App'x 27, 29 (2d Cir. 2021) (summary order); *Perry v. Robles*, 23-CV-7492(LTS), 2023 WL 6881993, at *2 (S.D.N.Y. Oct. 16, 2023) ("To establish the court's diversity jurisdiction, a plaintiff must first show that he and the defendants are citizens of different States. . . . The plaintiff must also allege to a 'reasonable probability' that his or her claims are in excess of the sum or value of $75,000, the statutory jurisdictional amount." (citing *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006) (cleaned up) (additional citation omitted).

To establish diversity jurisdiction, there must be complete diversity of citizenship between the plaintiffs and the defendants. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005); *Emiabata*, 848 F. App'x at 29. This means that a plaintiff cannot be a citizen of the same state as any of the defendants. *Emiabata*, 848 F. App'x at 29 (citing *Pa. Pub. Sch. Emps.' Retirement Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 117-18 (2d Cir. 2014) ("Section 1332 requires that all plaintiffs must be citizens of states diverse from those of all defendants.") (internal quotation marks omitted); *see also St. Paul Fire and Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 80 (2d Cir. 2005) ("Diversity is not complete if any plaintiff is a citizen of the same state as any defendant."). Courts evaluate diversity "by examining citizenship as of the time suit is commenced," *Housand v. Heiman*, 594 F.2d 923, 926 n. 6 (2d Cir. 1979), and "[a]n

6

individual's citizenship, within the meaning of the diversity statute, is determined by his domicile." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000). In this context, domicile "is defined as the place where a person 'has his true fixed home . . . and to which, whenever he is absent, he has the intention of returning." *Corio*, 232 F.3d at 42 (internal quotation marks and citation omitted). In addition, a prisoner "retains his pre-incarceration domicile," and the Court must therefore look to that state when evaluating whether diversity exists between the parties. *Poucher v. Intercounty Appliance Corp.*, 336 F. Supp. 2d 251, 253 (E.D.N.Y. 2004); *Blumatte v. Quinn*, 521 F. Supp. 2d 308, 312 n.3 (S.D.N.Y. 2007) (explaining that there is a rebuttable presumption that a prisoner retains his or her pre-incarceration domicile).

Here, Plaintiff alleges that, pre-incarceration he resided in Holbrook, New York. DE 11 at 9. As for the Defendants, Plaintiff alleges only that they each work in Suffolk County, New York. DE 11 at 2-3, 7-8, 10. These allegations do not establish that the diversity requirement is met because "residence alone is insufficient to establish domicile for jurisdictional purposes." *Van Buskirk v. United Grp. of Cos.*, 935 F.3d 49, 54 (2d Cir. 2019) (citing *Leveraged Leasing Admin. Corp. v. PacifiCorp Cap., Inc.*, 87 F.3d 44, 47 (2d Cir. 1996)); *accord Canedy v. Liberty Mut. Ins. Co.*, 126 F.3d 100, 103 (2d Cir. 1997) ("[I]t is well-established that allegations of residency alone cannot establish citizenship . . . .").

Given that Plaintiff has not provided facts regarding his or any of the Defendants' domicile, and because allegations of residency alone are insufficient to establish diversity jurisdiction, Plaintiff has not properly invoked this Court's diversity subject matter jurisdiction. *SBL Enterprises LLC v. Keystone Cap. Corp.*, No. 21-CV-4459, 2021 WL 2000365, at *3 (S.D.N.Y.

May 19, 2021) (collecting cases) (*Jacobs v. Patent Enforcement Fund, Inc.*, 230 F.3d 565, 567 (2d Cir. 2000) (finding that plaintiffs failed to allege diversity in complaint because "they had alleged only the residence, and not the citizenship (or domicile), of the parties"); *Sekiguchi v. Long*, No. 3:13-cv-01223 (CSH), 2013 WL 5357147, at *2 (D. Conn. Sept. 25, 2013) ("[W]hile Plaintiff as alleged each party's residency, Plaintiff has not established any party's citizenship . . . ."); *Jordan v. Verizon Corp.*, No. 08 Civ. 6414(GEL), 2008 WL 5209989, at *4 (S.D.N.Y. Dec. 10, 2008) (finding that plaintiff did not properly allege diversity of citizenship where she "d[id] not make a proper allegation as to her own citizenship" and "allege[d] only residency - not citizenship"); *Fagan v. Deutsche Bundesbanki,* No. 05 CV 10114 (CSH), 2005 WL 3534764, at *1 (S.D.N.Y. Dec. 22, 2005) (alteration omitted) ("Allegations of residence are insufficient to establish diversity jurisdiction. It is well-established that when the parties allege residence but not citizenship, the court must dismiss the suit." (quoting *Held v. Held*, 137 F.3d 998, 1000 (7th Cir. 1996))).

Further, although Plaintiff alleges that the amount in controversy is $118,000, (DE 9, ¶ II.B.3), there are no facts alleged in support of that amount. *See* DE 9, *generally*. Rather, Plaintiff alleges that he spent $18, 000 in "legal fees" in the underlying state proceedings and the balance sought is for punitive damages. (*Id*., ¶ II.B.3.) "'[E]ven where [the] allegations leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted.'" *GW Holdings Grp., LLC v. U.S. Highland, Inc.*, 794 F. App'x 49, 51 (2d Cir. 2019) (summary order) (quoting *Zacharia v. Harbor Island Spa, Inc.*, 684 F.2d 199, 202 (2d Cir. 1982); *also citing Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 785 (2d Cir. 1994) ("Where the damages sought are uncertain, the doubt should be resolved in favor of the plaintiff's pleadings.")). However, as the Second Circuit recently reiterated, the allegations must establish a "reasonable

probability that the amount-in-controversy requirement is satisfied." *Agoliati v. Block 865 Lot 300 LLC*, No. 22-51, 2023 WL 405769, at *2 (2d Cir. Jan. 26, 2023) (quoting *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 223 (2d Cir. 2017) (internal quotation marks and additional citation omitted)). Given that Plaintiff has not satisfied the diversity of citizenship requirement, the Court need not reach the amount in controversy question at this time. Thus, subject matter jurisdiction does not lie in this Court.[5]

### A. Domestic Relations Exception to Subject Matter Jurisdiction

Even if Plaintiff had properly invoked this Court's subject matter jurisdiction, this Court would be divested of such jurisdiction under the domestic relations exception. *Demuth v. Chenango Cnty. Dept. of Soc. Servs.*, No. 18-CV-0767, 2018 WL 5114175, at *3 (N.D.N.Y. Aug. 30, 2018), *report and recommendation adopted sub nom.*, *Demuth v. Chenango Cnty. Dept. of Soc. Servs.*, No. 18-CV-0767, 2018 WL 5113132 (N.D.N.Y. Oct. 19, 2018) ("There exists, however, a judicially recognized exception to federal subject matter jurisdiction in matters involving domestic relations.") (citing *Ankenbrandt v. Richards*, 504 U.S. 689, 701-04 (1992) (add'l citation omitted)). "Domestic relations is "an area of law that federal courts and Congress leave almost exclusively to state law and state courts." *Khalid v. Sessions*, 904 F.3d 129, 133 (2d Cir. 2018). "Federal district courts must abstain from exercising federal question jurisdiction of claims involving domestic relations issues, so long as those claims may be fully and fairly determined in the state courts." *Dixon v. Hahn*, No. 1:23-CV-5424 (LTS), 2023 WL

---

[5] Given Plaintiff's *pro se* status and in an abundance of caution, the Court has considered whether the complaint plausibly alleges a federal question such that subject matter jurisdiction pursuant to 28 U.S.C. § 1331 could be invoked. Even upon a liberal construction, the Court discerns no such claim. Further, even if the Court construed such a claim (which it does not), the Court is divested of subject matter jurisdiction by the domestic relations exception.

9

5103162, at *3 (S.D.N.Y. Aug. 7, 2023). "Although the domestic relation exception is narrow, "'it applies generally to issues relating to the custody of minors." *Varricchio v. Cnty. of Nassau*, 702 F. Supp. 2d 40, 67 (E.D.N.Y. 2010) (Bianco, D.J.) (quoting *Mitchell-Angel v. Cronin*, No. 95-7937, 1996 WL 107300, at *2 (2d Cir. Mar. 8, 1996)); *see also Washington v. Williams*, No. 19-CV-00289, 2019 WL 1876787, at *2 (E.D.N.Y. Apr. 26, 2019) (the Court lacks subject matter jurisdiction over plaintiff's claims that the state court judge violated her rights during custody and neglect proceedings). The Second Circuit instructs that, where, like here, tort claims "begin and end in a domestic dispute," state courts are better suited to adjudicate the claims. *See Schottel v. Kutyba*, No. 06-1577, 2009 WL 230106, at *1 (2d Cir. Feb. 2, 2009) (affirming, based on the domestic relations exception, the district court's dismissal of a complaint alleging, *inter alia*, that the defendants "fraudulently misrepresented to the court the former couple's residence in order to file divorce proceedings in New York," and, as a result, plaintiff was "deprived of custody and visitation rights").

 Here, as is readily apparent, Plaintiff's tort claims are inextricably entwined with his on-going state family court proceedings involving access to his children. Given that the state cases cited by Plaintiff in his complaint are on-going, Plaintiff can pursue such claims there. Indeed, Plaintiff has not alleged that these issues cannot be fully and fairly determined in the state court. Accordingly, for this additional reason, the Court lacks subject matter jurisdiction to adjudicate this complaint. "It is axiomatic that federal courts must 'verify the existence of subject-matter jurisdiction before proceeding to the merits.'" *Emiabata v. Farmers Ins. Corp.*, 848 F. App'x 27, 29 (2d Cir. 2021) (summary order) (quoting *Singh v. U.S. Citizenship & Immigr. Servs.*, 878 F.3d 441, 445 (2d Cir. 2017)). In the absence of subject matter jurisdiction for the reasons set forth above, the Court does

not reach the merits of Plaintiff's claims and the complaint is dismissed without prejudice pursuant to Federal Rule of Civil Procedure 12(h)(3).  *Humphrey v. Syracuse Police Dep't*, 758 F. App'x 205, 206-07 (2d Cir. 2019) (summary order) (explaining, where a court dismisses a complaint for lack of subject matter jurisdiction, the court does "not have the power to reach the merits and dismiss the claims against the defendants for failure to state a claim . . . .") (citing *Carter v. HealthPort Technologies, LLC*, 822 F.3d 47, 54-55 (2d Cir. 2016)).

### III.     Leave to Amend

A *pro se* plaintiff should ordinarily be given the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotation marks and citation omitted).   However, leave to amend is not required where it would be futile.  *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).

Here, for the reasons set forth above, this Court lacks subject matter jurisdiction to adjudicate Plaintiff's claims and such circumstance could not be cured with better pleading. Accordingly, leave to amend the complaint would be futile and is thus denied.   However, Plaintiff may pursue any valid claims he has against the Defendants in state court.

### CONCLUSION

Based on the foregoing, Plaintiff's applications to proceed IFP (DE 2, 9) are granted. However, complaint is dismissed without prejudice pursuant to Federal Rule of Civil Procedure 12(h)(3).   The Clerk of the Court shall enter judgment accordingly and close this case.   The Clerk of the Court shall also mail a copy of this Order and the judgment to the *pro se* Plaintiff at his address of record with "Legal Mail" noted on the envelope and shall record such mailing on the docket.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

**SO ORDERED**.

/s/ Gary R. Brown

**Hon. Gary R. Brown**
**United States District Judge**

Dated:  March 26, 2024
        Central Islip, New York

12